IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GERALDINE NICHOLAS, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF JAMES NICHOLAS, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:07-CV-00657 |
| M.W. KELLOGG COMPANY, KELLOGG, BROWN & ROOT, KBR, INC., AND HALLIBURTON, | § § § § | |
| Defendants. | § | |

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS

### INTRODUCTION

Plaintiff's Motion to Compel Arbitration is an exercise in gamesmanship and should be denied. When Plaintiff commenced this action on January 17, 2007, she and/or her attorneys knew or should have known of the arbitration clause upon which they now rely. (It is contained in the very severance agreement upon which Plaintiff's claims are based.) But after weighing their options, Plaintiff and her attorneys chose to proceed in state court. After the case was removed to this Court, Plaintiff sought to have it remanded to state court, which required that Defendants respond to a motion to remand and that this Court issue a decision denying Plaintiff's motion. Despite multiple opportunities over the next several months, Plaintiff chose not to mention the arbitration clause to the Court and to allow litigation in this Court to proceed. Only on November 20, 2007, after the case had been on file for over ten months, did Plaintiff file the instant Motion and assert her alleged right to arbitrate.

1

Plaintiff has plainly waived any right she may have to arbitrate her claims. She has substantially invoked the judicial process to Defendants' detriment and she has no defensible reason for failing to seek arbitration—indeed, for failing even to cite the arbitration clause upon which she now attempts to rely—until this case had been on file for over ten months and Plaintiff had lost in her (first) attempt to escape this forum. Alternatively, Plaintiff has failed to demonstrate that she is a party to the arbitration agreement at issue or otherwise entitled to invoke the agreement with respect to claims brought in her individual capacity.

## PROCEDURAL HISTORY

On January 17, 2007, Plaintiff filed this action in Texas state court. The lawsuit is based on an alleged breach of a promise contained in a severance agreement between Plaintiff's husband and his former employer, The M.W. Kellogg Company (the "severance agreement"). (Original Petition ¶ 3, attached as Exh. B to Defendants' Notice of Removal, Docket Entry No. 1) The Original Petition did not say anything about arbitration or an arbitration clause.

On February 23, 2007, Defendants removed the case to this Court. (DEN 1) On March 23, 2007, Plaintiff moved to remand the case to state court. (DEN 5) On April 18, 2007, the Court denied the Motion to Remand and granted Plaintiff leave to amend her lawsuit. (DEN 7) Plaintiff did so in a First Amended Complaint filed on May 2, 2007. (DEN 8) The First Amended Complaint did not mention arbitration.

On June 19, 2007, the parties filed their Joint Discovery/Case Management Plan; Plaintiff said nothing about arbitration. (DEN 10) On August 23, 2007, Plaintiff responded to Defendants' written discovery without raising arbitration or objecting on the ground that discovery was properly conducted in arbitration. (*See* Attachment 1 to Declaration of Michael J. Muskat, attached as Exhibit A) Nor did Plaintiff object to sitting for a deposition on September

18, 2007, which was noticed and conducted under the Federal Rules. (*See* Attachment 2 to Muskat Decl.)

Only on November 20, 2007—over ten months after Plaintiff chose Texas state court in which to pursue this case—did Plaintiff file the instant Motion and assert her alleged right to arbitrate. The Motion is based on an arbitration clause in the severance agreement first referenced in the Original Petition filed in state court on January 17, 2007. The clause provides for "arbitration under the exclusive jurisdiction of the American Arbitration Association in Houston, Texas." (Exh. B to DEN 1)

Subsequent to filing this Motion, Plaintiff has continued to invoke the judicial process. On December 4, 2007, Plaintiff noticed the deposition of a third-party witness, Jim Wilhite, and proceeded to take the deposition on December 18, 2007. (*See* Attachment 3 to Muskat Decl.)

## ARGUMENT

### I.   PLAINTIFF WAIVED ANY RIGHT SHE MAY HAVE HAD TO ARBITRATE.

Like any other contractual right, the right to arbitrate a dispute can be waived. *Miller Brewing Co. v. Fort Worth Distributing Co., Inc.*, 781 F.2d 494, 497 (5th Cir. 1986). Although waiver of arbitration is not favored, waiver will be found when the party seeking arbitration "substantially invokes the judicial process to the detriment or prejudice of the other party." *Williams v. Cigna Financial Advisors, Inc.*, 56 F.3d 656, 661 (5th Cir. 1995).

Because a plaintiff's belated attempt to compel arbitration of her own lawsuit so clearly suggests forum-shopping and invokes fair notice concerns, perhaps it is not surprising that there are few reported decisions in this jurisdiction addressing waiver in this procedural context.[1]

---

[1]   In the vast majority of waiver cases, it is the defendant (who had no ability to choose the initial forum) who seeks to compel arbitration of the plaintiff's claims. Separately, Defendants note that this case does not present the situation where the arbitration agreement or applicable state law permits a party to seek temporary relief from a court pending arbitration. Waiver is not found in such situations absent

Some decisions which Defendants have found, however, are expressly critical of such tactics and suggest a waiver analysis which is unforgiving toward the moving party. For example, in *Huntington Bank, Inc. v. Merrill Lynch, Pierce, Fenner & Smith*, 77 F.3d 479, 1996 WL 46808 (5th Cir. Jan. 15, 1996), the plaintiff filed a lawsuit despite having at least constructive knowledge of an applicable arbitration provision. *Id.* at *3. Six months later, the plaintiff moved to compel arbitration of its own lawsuit. The Fifth Circuit easily affirmed the district court's finding of waiver. *Id.* at **4-5. At one point the court observed:

> While we hesitate to find that a party has waived its contractual right to arbitration, "parties who use federal courts to advance their causes and then seek to finish their suits in alternate fora" are not kindly looked upon by this Court.

*Id.* (quoting *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 578 (5th Cir. 1991)).

Similarly, in *Prudential-Bache Secs. v. Stevenson*, 706 F. Supp. 533 (S.D. Tex. 1989), Judge Hittner found waiver when it was "Plaintiff, who, despite having failed to demand or even mention arbitration in its complaint[,] now seeks to compel arbitration." *Id.* at 535. The court went on to state, accurately, that "judicial due process concerns are heightened in situations in which it is the defendant who, having been hailed into court, is deprived of notice of the plaintiff's interest in arbitration." *Id.* At bottom, Judge Hittner held, "Plaintiff cannot invoke the jurisdiction of the Court, permit six months to pass, and then seek an alternative forum by a motion to compel arbitration." *Id.*

Particularly in light of these special concerns, Plaintiff's actions in this case clearly meet the test for waiver set out in *Williams v. Cigna Financial Advisors* and subsequent cases. First, to invoke the judicial process, "the party must, at the very least, engage in some overt act in court

---

exceptional circumstances. *See, e.g.*, *Performance Unlimited, Inc. v Questar Publishers, Inc.* 52 F.3d 1373, 1380 (6th Cir. 1995) (quoting *Lever Bros. Co. v. International Chem. Workers Union*, Local 217, 554 F.2d 115, 123 (4th Cir. 1976)); *Mitsui & Co., Ltd. v. Delta Brands, Inc.*, 2005 WL 1214603, ** 5-8 (N.D. Tex. May 20, 2005).

4

that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Republic Ins. Co. v. Paico Receivables, L.L.C*., 383 F.3d 341, 344 (5th Cir. 2004) (quoting *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999)). It is difficult to imagine many other cases that would more easily meet this standard than the instant case. Plaintiff's filing of this case in state court—and, of course, her post-removal attempt to have the matter remanded back to state court—clearly constitute "overt act[s]" which evinced her desire to have a court (namely the state court) decide the case. In addition to these overt acts, Plaintiff pursued the case in court for over ten months and chose not to utilize multiple opportunities, such as the Rule 26(f) plan and her responses to Defendants' discovery, to alert this Court to the arbitration clause upon which she now relies. Even after she brought the clause to the Court's attention, Plaintiff initiated discovery in this forum by noticing and taking the deposition of a third-party witness.

Defendants have also been prejudiced by Plaintiff's actions. Had Plaintiff demanded arbitration instead of filing this case in state court, Defendants would not have had to remove the case and then fight Plaintiff's meritless attempt at remand. This alone is clear and indisputable prejudice, although there is more—Defendants also would have avoided the preparation of an answer specifically admitting or denying each of Plaintiff's allegations and the preparation and filing of a Rule 26(f) plan. *See* American Arbitration Association Employment Arbitration Rules and Mediation Procedures, Rule 4 (allowing the responding party to decide whether to file an answer, which may be limited to a "brief response to the claim and the issues presented"); Rule 8 (discussing the arbitration management conference but not requiring a joint discovery plan); and Rule 9 (giving the arbitrator the discretion to determine the discovery to allow), all *available at*

www.adr.org/sp.asp?id=32904 (last visited December 31, 2007).[2]  Finally, of course, Plaintiff's timely invocation of the arbitration clause would have avoided the significant potential delay in the resolution of the dispute caused by the belated Motion to Compel.

Under these circumstances, Plaintiff has waived any right she may have had to arbitrate. *Cf. Prudential Secs.*, 706 F. Supp. at 536 (finding waiver based on similar facts).

### B.  Plaintiff and/or Her Attorneys Had Notice of the Arbitration Clause Before this Lawsuit Was Filed.

Plaintiff cannot claim that she or her lawyers were unaware of the arbitration clause upon which they now rely.  The clause is part of the very severance agreement—signed in 1998—upon which Plaintiff's claims are based.  Although in her deposition Plaintiff made the highly dubious claim that she did not remember whether she knew of the severance agreement at the time she filed this suit (Deposition of Geraldine Nicholas at 93:2-93:9, excerpts attached as Exhibit B),[3] she at least had notice of the agreement and arbitration clause through her lawyers, who prepared Plaintiff's Original Petition and presumably read the document upon which they based the case.

Further cutting against any attempt to excuse Plaintiff's delay is the fact that prior to filing suit, Plaintiff thoroughly investigated the possibility of resolving this dispute through arbitration under the KBR Dispute Resolution Program (DRP) and decided against it.  On

---

[2]  Defendants respectfully request that the Court take judicial notice of the AAA Employment Arbitration Rules, as they are not subject to reasonable dispute and are capable of accurate and ready determination by resort to a source whose accuracy cannot be reasonably questioned.  *See* Fed. R. Evid. 201.

[3]  Plaintiff claimed that she became actually aware of the clause in the "spring of '07," and then clarified that it was, at the latest, the date on which she faxed a certain copy of the agreement to one of her lawyers. (Nicholas Depo. at 91:21-92:3, 132:3-20 at Exh. B)  That date was April 27, 2007. (Nicholas Depo. Exh. 3, attached as Exhibit C)  Even that date was almost seven months before she filed the instant motion and it was before she filed her First Amended Complaint, the Rule 26(f) plan, and served discovery responses (none of which said anything about arbitration).  This is still an unjustifiable delay.

January 10, 2007—seven days before filing this lawsuit—Plaintiff participated in a telephone conference with a DRP ombudsman and asked numerous questions about arbitration under the DRP—so many questions, in fact, that she took three pages of notes reflecting the information she learned during the conversation. (Nicholas Depo. at 81:19-89:5 at Exh. B; Nicholas Depo. Exh. 20, attached as Exhibit D)  One sentence in the notes specifically references the concept of a signed arbitration agreement; it states "Did Jim [Nicholas] sign an agreement to agree to arbitration?"  (Nicholas Depo. at 88:4-88:25 at Exh. B; Nicholas Depo. Exh. 20, attached as Exhibit D)  Other notes taken in a conversation with a different person on January 10, 2007 reflect Plaintiff's concerns about how to get "fair discovery" during arbitration.  (Nicholas Depo. Exh. 24, attached as Exhibit E)  After these conversations, Plaintiff decided not to demand arbitration of this dispute.

Although Plaintiff now seeks to arbitrate under American Arbitration Association rules (as referenced in paragraph 17 of the severance agreement) and not under the DRP, it is clear that prior to filing suit she gave extensive thought to the pros and cons of arbitration, including whether she could get "fair discovery" in arbitration.  She also was put on actual notice of the significance of whether James Nicholas had made an "agreement" to arbitrate.  This extensive pre-suit deliberation about the best forum in which to resolve this dispute is further evidence that Plaintiff's delay in demanding arbitration cannot be excused and that waiver has occurred.

    **C.**    **The Severance Agreement Itself Does Not Preclude Waiver of Its Arbitration Clause.**

Defendants suspect that Plaintiff may argue that a particular clause in the severance agreement precludes her ability to waive the right to invoke the agreement's arbitration provision.  That clause states: "No attempted modification or waiver of any of the provisions of

this Agreement shall be binding on either party unless in writing and signed by both Kellogg and you." (Motion to Compel Arbitration, Exh. A, ¶ 16)

This clause does not undermine Defendants' waiver argument. First, the portion of the clause dealing with "waiver"—which speaks in terms of obtaining a signed "writing" to make a waiver "binding"—is most sensibly read to apply to one party's failure to timely enforce the *other* party's affirmative obligation under the agreement,[4] not, as in this case, a party's failure to timely invoke a clause requiring affirmative action on its *own* part, where it is difficult to imagine the circumstances under which the parties would sign a writing.

But even if the clause was construed to apply to Plaintiff's actions in this case, the Fifth Circuit has held that even "no waiver" provisions which are specific to the right to arbitrate (unlike the clause in this case) do not limit a court's ability to find waiver pursuant to its inherent ability to control its docket. In *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 348 (5th Cir. 2004), the court of appeals found the elements of waiver to have been met under Texas law and thereafter refused to enforce a "no waiver" provision specific to arbitration which stated that the "institution and maintenance of an action for judicial relief . . . shall not be deemed a waiver of a party's right to demand arbitration or to continue arbitration."

Under the circumstances of this case—where Plaintiff has substantially invoked the court process and now is attempting to change forums for tactical reasons—Defendants respectfully submit that the Court should apply the *PAICO* case and decline to enforce the "no waiver" clause with respect to Plaintiff's actions.

---

[4] For example, the clause might apply in a hypothetical situation where the company had not paid Mr. Nicholas the severance payment promised in paragraph 5 and Mr. Nicholas had delayed in enforcing that obligation.

## II. ALTERNATIVELY, PLAINTIFF HAS NO STANDING TO COMPEL ARBITRATION WITH RESPECT TO THE CLAIMS BROUGHT IN HER INDIVIDUAL CAPACITY.

### A. Plaintiff Does Not Meet Her Burden to Demonstrate that She is a Party to an Arbitration Agreement or Otherwise Entitled to Enforce the Agreement.

To compel arbitration under the Federal Arbitration Act, Plaintiff has the initial burden to establish (1) the existence of a valid arbitration agreement between the parties, and (2) that the claims asserted fall within the scope of that agreement. *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (citations omitted). To establish the first prong regarding an arbitration agreement's existence, Plaintiff has the burden to prove that she was a party to it or otherwise had the right to enforce the agreement. *See Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002).

As noted above, Plaintiff's Motion rests on the arbitration provision in the severance agreement between M.W. Kellogg and James Nicholas. (Motion to Compel Arbitration ¶ II). Plaintiff was not a party to that agreement and she makes no argument in support of her ability to enforce its arbitration clause. Thus, Plaintiff has failed to carry her burden to establish that she has standing to compel arbitration under the agreement with respect to claims brought in her individual capacity.

### B. Plaintiff is Not a Third-Party Beneficiary to the Arbitration Provision Upon Which She Relies.

Although Plaintiff has failed to establish standing, Defendants assume that Plaintiff will address this point in a reply brief and will argue that she is a third-party beneficiary of the severance agreement's arbitration clause. Any such argument must fail.[5]

---

[5] In the event that Plaintiff files a reply brief which argues a different basis for standing, Defendants would respectfully request that they be permitted to file a surreply to respond to such argument, as no such argument is apparent from Plaintiff's barebones Motion to Compel Arbitration.

9

Under common-law contract principles, there is a presumption against third-party beneficiary status and such status is conferred only if the contracting parties clearly intended to confer a benefit on the third party. As recently stated by the Texas Supreme Court:

> First, there is a presumption against conferring third-party-beneficiary status on noncontracting parties. In deciding whether a third party may enforce or challenge a contract between others, it is the contracting parties' intent that controls. The intent to confer a direct benefit upon a third party must be clearly and fully spelled out or enforcement by the third party must be denied. Incidental benefits that may flow from a contract to a third party do not confer the right to enforce the contract. <u>A third party may only enforce a contract when the contracting parties themselves intend to secure some benefit for the third party and entered into the contract directly for the third party's benefit</u>. To qualify as one for whose benefit a contract was made, the third party must benefit more than incidentally; he must be either a donee or creditor beneficiary. A person is a donee beneficiary if the performance promised will come to him as a pure donation. If performance will come to satisfy a duty or legally enforceable commitment owed by the promisee, then the third party is considered a creditor beneficiary.

*South Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007) (internal quotes and cites omitted) (emphasis added). *See also Dorsett Bros. Concrete Supply v. Safeco Title Ins. Co.*, 880 S.W.2d 417, 421 (Tex. App.—Houston [14th Dist.] 1993, writ denied) ("The right of a [third party] to enforce the contract . . . 'should not rest on implication,' but should be clearly apparent, and any doubt should be resolved against such intent.") (citations omitted).

In the instant case, all of M.W. Kellogg's promises in the severance agreement flow solely to James Nicholas and nothing suggests that Geraldine Nicholas was an intended beneficiary of those promises. Although the agreement contains numerous legal terms, clauses, and concepts often found in severance agreements, conspicuously absent is any statement that any third-party would be entitled to enforce the promises made to James Nicholas.

Defendants anticipate that Plaintiff may reply that she is an intended third-party beneficiary because (a) the agreement promises James Nicholas lifetime participation in

company benefits plans (an interpretation that Defendants dispute), and (b) Plaintiff was a "beneficiary" under James Nicholas' group life insurance policy. Any such argument would go too far in imputing the parties' intent. The agreement does not even mention life insurance, let alone the rights of any beneficiaries to any such insurance that James Nicholas may have decided to continue after the agreement was signed. Any such assumptions about M.W. Kellogg's knowledge and intent when drafting and executing the agreement are insufficiently specific to demonstrate third-party beneficiary status.[6]

## Conclusion

Plaintiff has waived any right she may have had to arbitrate. Alternatively, she has no standing to invoke the severance agreement's arbitration clause as to claims brought in her individual capacity. Defendants respectfully request that this Court deny Plaintiff's Motion to Compel Arbitration and to Stay Proceedings.

Respectfully submitted,

/s/ Michael J. Muskat
MICHAEL J. MUSKAT
Attorney-in-Charge
State Bar No. 24002668
S.D. Tex. Bar No. 22816
STEPHANIE SCHMUTZ PARENTE
State Bar No. 24037444
440 Louisiana St., Ste. 590
Houston, Texas 77002
(713) 987-7851 (Telephone)
(713) 987-7854 (Facsimile)

---

[6] Although Plaintiff was a designated beneficiary of James Nicholas' group life coverage and would therefore qualify as a "beneficiary" of that insurance policy for ERISA purposes, the issue here is whether Plaintiff is a third-party beneficiary of the severance agreement's promises, including its arbitration clause. As the foregoing demonstrates, Plaintiff cannot carry her burden to show that she is a third-party beneficiary to the agreement and its arbitration clause under common-law principles which are applied when construing contracts.

                                                Counsel for Defendants KBR, Inc., Kellogg Brown & Root LLC (as successor-in-interest to The M.W. Kellogg Company), Kellogg Brown & Root LLC, and Halliburton Co.

## **CERTIFICATE OF SERVICE**

      This is to certify that on January 4, 2008, a true and correct copy of this pleading has been served on Plaintiff's counsel via Notice of Electronic Filing:

                                                /s/ Michael J. Muskat
                                                MICHAEL J. MUSKAT